**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jasmine Rodriguez,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>City of Tempe, et al.,<br><br>　　　　　Defendants. | No. CV-25-01488-PHX-KML<br><br>**ORDER** |

　　　　Plaintiff Jasmine Rodriguez alleges a Tempe police officer, defendant Benjamin Trotter, used excessive force against her while arresting a third party. (Doc. 15.) She brings three claims: excessive force against Officer Trotter, municipal liability against defendant City of Tempe ("Tempe") and negligence against both defendants. Tempe moved to dismiss the municipal liability claim against it. (Doc. 17.) Its motion is granted with leave to amend.

**I.　　Factual Allegations**

　　　　At around 2:00 a.m. on May 5, 2024, Jasmine Rodriquez was leaving a bar in Tempe when she stopped in front of a movie theater ticket booth. (Doc. 15 at 3.) A man, later identified as non-party Trequan Whirl, walked up to Rodriguez while three Tempe police officers approached him and attempted to arrest him. (Doc. 15 at 4.) In the commotion, Rodriguez alleges the officers gave her no explanation, no warning, and no instruction to move in a certain direction. (Doc. 15 at 4.) Instead, she "was caught between the three officers," with one reaching for Whirl from her left and another approaching from her right.

1  (Doc. 15 at 4.) Officer Trotter then "grabbed her from behind and pulled her out of the
2  situation" and forcibly detained her. (Doc. 15 at 4.) While holding her and still without
3  giving her instructions or commands, he "slammed her face into the ticket booth." (Doc.
4  15 at 4.) Rodriguez briefly lost consciousness and suffered a fractured nose, two cracked
5  front teeth, bruised and split lips, and facial bruises and abrasions. (Doc. 15 at 4.)

6  Rodriguez filed this suit against Officer Trotter and Tempe. She alleged a 42 U.S.C.
7  § 1983 excessive force claim against Officer Trotter and a negligence claim against Officer
8  Trotter and Tempe. Rodriguez's other claim is a § 1983 municipal liability claim based on
9  Tempe failing to implement policies and procedures to ensure officers' fitness for duty and
10 adequately investigate excessive force allegations; failing to adequately train or supervise
11 employees regarding officer conduct with citizens; "and/or [] fail[ing] to implement
12 mandatory training" regarding use of force. (Doc. 15 at 7.) Despite Tempe knowing
13 inadequate policies and procedures would result in excessive force violations (Doc. 15 at
14 6-7), she alleges Tempe "made deliberate and conscious decisions to create inadequate
15 policies and procedures" and to ratify widespread unconstitutional practices and customs
16 (Doc. 15 at 7.) Officer Trotter and Tempe answered the excessive force and negligence
17 claims, but Tempe moved to dismiss the municipal liability claim.

18 **II.    Legal Standard**

19 "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
20 accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,
21 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)
22 (internal citations omitted)). This is not a "probability requirement," but a requirement that
23 the factual allegations show "more than a sheer possibility that a defendant has acted
24 unlawfully." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that
25 allows the court to draw the reasonable inference that the defendant is liable for the
26 misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for
27 relief will . . . be a context-specific task that requires the reviewing court to draw on its
28 judicial experience and common sense." *Id*. at 679.

### III. Analysis

"A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978) (no *respondeat superior* liability when municipality employs tortfeasor). But a municipality may be held liable for constitutional violations in some specific circumstances. *Monell*, 436 U.S. at 690-91. In general, a plaintiff may pursue three theories in alleging a *Monell* claim: (1) the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury"; (2) a municipality failed to train employees in a manner so inadequate that the "policymakers of the city can reasonably be said to have been deliberately indifferent to the need"; or (3) "an official with final policy-making authority" was the tortfeasor or ratified a subordinate's unconstitutional action. *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802-03 (9th Cir. 2018) (simplified); *see also Gordon v. Cnty. of Orange*, 6 F.4th 961, 973-34 (9th Cir. 2021). Rodriguez does not specify which *Monell* theory she is attempting to invoke but she uses language that matches the first two. (Doc. 15 at 6-8.)

Rodriguez's first *Monell* theory requires she allege facts describing a policy or a "persistent and widespread custom" and facts suggesting that policy or custom caused her injury. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (plaintiffs' allegations of dozens of relevant incidents did not sufficiently establish custom). Rodriguez does not allege sufficient facts supporting this theory. In fact, the complaint does not allege any facts about a particular policy or custom, instead conclusorily reciting the *Monell* standard. (*See* Doc. 15 at 6 ("Tempe deliberately and consciously adopted unconstitutional policies and/or encouraged, tolerated, or ratified unconstitutional widespread Tempe Police Department practices and customs").) The complaint does not make clear which policies are at issue, let alone why they might be unconstitutional. Rodriguez has not stated a *Monell* claim under the policy or custom theory.

Rodriguez's second theory of *Monell* liability based on inadequate training requires she allege facts showing city decisionmakers were on notice of "particular omission[s] in their training program" that would cause employees to violate citizens' rights, yet chose to retain that program. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference" in training. *Id*. at 62 (citation omitted); *see also Rodriguez*, 891 F.3d at 803 (requiring evidence of widespread practice or repeated constitutional violations). When a plaintiff lists prior incidents of relevant conduct or examples of policy or training failures, those examples must be detailed enough for a court to determine the incidents are sufficiently similar to the one at issue. *See Ames v. City of Tempe*, No. CV-20-02102-PHX-DWL, 2021 WL 5578868, at *4 (D. Ariz. Nov. 29, 2021); *Connick*, 593 U.S. at 61. Again Rodriguez does not allege sufficient facts supporting this theory.

The complaint does not provide any facts regarding a pattern of similar excessive force violations by Tempe officers or even any facts regarding officers' training. (Doc. 15.) For this theory too, the complaint includes only conclusory recitations of the *Monell* standard. (*See* Doc. 15 at 6 ("Tempe either failed to train or inadequately trained Officer Trotter regarding encounters with persons of interest, including, but not limited to the appropriate use of force, proper procedures for detention and takedowns, interactions with persons of interest, and minimizing unnecessary injury to citizens.") As Tempe thoroughly explains (Doc. 17 at 6-9), the case law demands a much more fact-intensive pleading.

Tempe's motion to dismiss the *Monell* claim is granted. Based on the very limited factual allegations in the current complaint, it is difficult to determine what factual basis, if any, supports Rodriguez's attempt to pursue a *Monell* claim. Because it is possible she would be able to allege additional facts, leave to amend is granted. But Rodriguez is cautioned that if she hopes to pursue a *Monell* claim, she must provide significantly more facts to meet the *Iqbal*/*Twombly* standard.

### IV. Conclusion

The first amended complaint does not allege a *Monell* claim against Tempe but Rodriguez is granted leave to amend. Because her claims of excessive force and negligence will proceed, the parties must confer and prepare a Joint Case Management Plan.

Accordingly,

**IT IS ORDERED** the motion to dismiss Count II of the First Amended Complaint (Doc. 17) is **GRANTED** with leave to amend. No later than **January 26, 2026**, plaintiff may file an amended complaint. If no amended complaint is filed by that date, the two remaining claims in the current complaint will proceed.

**IT IS FURTHER ORDERED** as follows:

The parties are directed to meet, confer, and develop a Rule 26(f) Joint Case Management Report, which must be filed within 4 weeks of the date of this order. It is the responsibility of plaintiff(s) to initiate the Rule 26(f) meeting and prepare the Joint Case Management Report. Defendant(s) shall promptly and cooperatively participate in the Rule 26(f) meeting and assist in preparation of the Joint Case Management Report.

The Joint Case Management Report shall contain the following information in separately-numbered paragraphs.

1. The parties who attended the Rule 26(f) meeting and assisted in developing the Joint Case Management Report;

2. A list of all parties in the case, including any parent corporations or entities (for recusal purposes);

3. Any parties that have not been served and an explanation of why they have not been served, and any parties that have been served but have not answered or otherwise appeared;

4. A statement of whether any party expects to add additional parties to the case or otherwise amend pleadings;

5. The names of any parties not subject to the court's personal (or in rem) jurisdiction;

6. A description of the basis for the court's subject matter jurisdiction, citing specific jurisdictional statutes. If jurisdiction is based on diversity of citizenship, the report shall include a statement of the citizenship of every party and a description of the amount in dispute. See 28 U.S.C. §1332;

7. A short statement of the nature of the case (no more than three pages), including a description of each claim, defense, and affirmative defense;

8. A listing of contemplated motions and a statement of the issues to be decided by those motions;

9. Whether the case is suitable for reassignment to a United States Magistrate Judge for all purposes or suitable for referral to a United States Magistrate Judge for a settlement conference;

10. The status of any related cases pending before this or other courts;

11. A discussion of any issues relating to preservation, disclosure, or discovery of electronically stored information ("ESI"), including the parties' preservation of ESI and the form or forms in which it will be produced;

12. A discussion of any issues relating to claims of privilege or work product;

13. A discussion of necessary discovery, which should take into account the December 1, 2015 amendments to Rule 26(b)(1) and should include:

    a. The extent, nature, and location of discovery anticipated by the parties and why it is proportional to the needs of the case;

    b. Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure;

    c. The number of hours permitted for each deposition. The parties also should consider whether a total number of deposition hours should be set in the case, such as twenty total hours for plaintiff and twenty total hours for defendants. Such overall time limits have the advantage of providing an incentive for each side to be as efficient as possible in each deposition, while also allowing parties to allocate time among

witnesses depending on the importance and complexity of subjects to be covered with the witnesses;

14. Proposed deadlines for each of the following events. In proposing deadlines, the parties should keep in mind the Case Management Order will contain deadlines to govern this case and once the dates have been set the court will vary them only upon a showing of good cause. A request by counsel for extension of discovery deadlines in any case that has been pending more than two years must be accompanied by a certification stating the client is aware of and approves of the requested extension. The court does not consider settlement talks or the scheduling of mediations to constitute good cause for an extension. The parties must propose the following:

    a. A deadline for the completion of fact discovery, which will also be the deadline for pretrial disclosures pursuant to Rule 26(a)(3). This deadline is the date by which all fact discovery must be completed. Discovery requests must be served and depositions noticed sufficiently in advance of this date to ensure reasonable completion by the deadline, including time to resolve discovery disputes. Absent extraordinary circumstances, the court will not entertain discovery disputes after this deadline;

    b. Dates for full and complete expert disclosures and rebuttal expert disclosures, if any;

    c. A deadline for completion of all expert depositions;

    d. A date by which any Rule 35 physical or mental examination will be noticed if such an examination is required by any issues in the case;

    e. A deadline for filing dispositive motions;

    f. Case-specific deadlines and dates, such as the deadline to file a motion for class certification or a date on which the parties are available for a Markman (patent claim construction) hearing;

    g. A date by which the parties shall have engaged in face-to-face good

faith settlement talks;

h. Whether a jury trial has been requested and whether the request for a jury trial is contested, setting forth the reasons if the request is contested;

i. Any other matters that will aid the court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1;

15. A statement indicating whether the parties would prefer that the court hold a case management conference before issuing a scheduling order—and, if so, an explanation of why the conference would be helpful.

**IT IS FURTHER ORDERED** the parties shall file a proposed Case Management Order containing all the proposed dates at the same time they file the Rule 26(f) Case Management Report. The proposed Case Management Order must also be emailed in Word format to Lanham_Chambers@azd.uscourts.gov.

Dated this 12th day of January, 2026.

Honorable Krissa M. Lanham
United States District Judge